ALAN TARIN *vs.* COMMISSIONER OF THE DIVISION OF
MEDICAL ASSISTANCE.

Middlesex. January 6, 1997. - April 17, 1997.

Present: WILKINS, C.J., O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Medicaid. Health Care Facility. Divorce and Separation,* Child support.
*Regulation. Constitutional Law,* Equal protection of laws. *Due Process of
Law,* Substantive rights. *Words,* "Available income."

Description of the statutory scheme and regulations comprising the State
and Federal program of medical assistance to needy individuals
otherwise known as Medicaid. [746-750]

A decision of the Division of Medical Assistance that income "available"
to a divorced Medicaid recipient included income used to make court-
ordered child support payments was not demonstrated to be arbitrary,
capricious, or contrary to law. [750-754]

The statutory classification set forth in the Medicaid Act, 42 U.S.C.
§§ 1396 et seq., and State and Federal regulations thereunder, that dif-
ferentiates between divorced and married Medicaid recipients in
determining the recipient's "available" income has a rational basis and
its application to disallow a divorced recipient a deduction from that
income on account of his child support payments did not deny equal
protection of the laws to such a recipient [754-756], nor did it constitute an
impairment of the recipient's liberty interest to be free from governmen-
tal intrusion in the rearing of his children [756-757].

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 21, 1993.

The case was heard by *Judith A. Cowin,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Megan H. Christopher & Richard Pattison* for the plaintiff.

*Edward Wu,* Assistant Attorney General, for the defen-
dant.

MARSHALL, J. Medicaid recipient Alan Tarin (Tarin)
sought judicial review of a decision of the Division of Medical
Assistance (division) that his court-ordered child support
payments were income "available" to him for the purpose of

calculating how much he must contribute to the cost of his nursing home care. A judge in the Superior Court affirmed the division's decision. Tarin appealed and we transferred the case to this court on our own motion. We affirm the decision of the Superior Court.

I

Tarin and Mary Jane Tarin were married on July 11, 1971, and have two children from that marriage.[1] On June 2, 1993, the Middlesex Probate and Family Court granted the couple a divorce, which became final on August 31, 1993. Tarin is a forty-nine year old man who suffers from Parkinson's Disease. In July, 1993, while the final judgment of divorce was pending, he entered Mediplex, a nursing home in Lexington, because he had become so incapacitated that he was no longer able to be cared for at home.

To understand Tarin's Medicaid challenge, his financial status in the wake of his divorce is relevant. The Tarins negotiated a separation agreement that the Probate and Family Court incorporated without change into the divorce judgment. The parties agreed that all their assets, whether jointly owned or in his or her name, would go to Mrs. Tarin.[2] Only Tarin's Social Security and other disability insurance payments totalling $2,846 each month were not transferred to Mrs. Tarin. From that amount Tarin agreed to pay his former wife $407 each week for child support from March, 1993, to June, 1994, and $160 each week thereafter. Tarin's son and daughter were also each to receive $188 a month in Social Security benefits through their father.[3] The separation agreement also required Tarin to create an education trust fund for

[1]Nathaniel Riley Tarin was born on April 4, 1977; Kirsten Meredith Tarin was born on April 12, 1982.

[2]Tarin released to his wife all his interest in all bank accounts, both savings and checking; a savings and investment plan; two automobiles; an individual retirement account (IRA) account of $6,143.81; all furniture, furnishings, and contents of the family home (the family home itself is held in trust); securities held in his wife's name; his wife's life insurance; and all other tangible and intangible personal property in his wife's control and possession.

[3]Tarin claimed that in approving the child support payments to which he had agreed, the Probate and Family Court was "cognizant" of the fact that his two children were receiving these benefits. He also asserts that the court "established their needs on their behalf." On the record before us we find

his children using his individual retirement account of $6,234.81.[4] On May 18, 1993, after the parties had signed the separation agreement, but before their divorce was final, Mrs. Tarin relieved him of this obligation because "setting this money in trust would have a Medicaid ineligibility penalty that [she] was not aware of when [she] signed the original agreement."

Tarin applied for, and received, Medicaid benefits from the division.[5] On September 20, 1993, after he entered the nursing home and after the Tarins' divorce became final, the division informed him that the amount that he would have to contribute to his long-term care ("patient paid amount") would increase because it was disallowing his claimed deduction for child support payments from his "available" income.[6] The sum of the revised "patient-paid amount" and Tarin's child support payments is greater than his monthly income; Tarin is unable to pay both.

Tarin appealed from that decision, and an administrative "fair hearing" was held on November 10, 1993. On November 22, 1993, a welfare appeals referee of the Department of Public Welfare upheld the decision and Tarin sought judicial review pursuant to G. L. c. 30A, § 14. A judge in the Superior Court affirmed the decision. Tarin then filed this appeal.

no support for those claims. The Tarins agreed between themselves that he would pay a substantial portion of his only remaining income to his former wife for child support. There is nothing in the record from which we can conclude that the Probate and Family Court made any independent finding concerning the needs of the children.

[4]It is not clear from the record whether Tarin had one or two IRA accounts, each containing close to identical amounts. See note 2, *supra*.

[5]It is not clear exactly when Tarin applied for Medicaid benefits. He was admitted to the nursing home as the parties were in the process of obtaining a divorce. According to Tarin, he began receiving Medicaid benefits sometime prior to the conclusion of the nisi period of his divorce.

[6]The notice was issued by the Department of Public Welfare (department) which, prior to July 17, 1993, was responsible for the administration of the Medicaid program in Massachusetts. See St. 1993, c. 161. An interagency agreement between the department and the newly created division provided for a one year transfer transition period. The division is the Massachusetts regulatory agency now responsible for administering the Medicaid program. See *Cohen* v. *Commissioner of the Div. of Medical Assistance*, 423 Mass. 399, 399 n.3 (1996), cert. denied sub nom. *Kokoska* v. *Bullen*, 117 S. Ct. 687 (1997).

## II

The meaning of the term "available income" is the crux of Tarin's appeal. We must decide whether the division was correct in determining what income is "available" to Tarin for the purpose of calculating the amount that he must contribute to his long-term nursing home care. We begin by describing the statutory scheme and regulations at issue.

Medicaid, enacted in 1965 as Title XIX of the Social Security Act, often referred to as the Medicaid Act, 42 U.S.C. §§ 1396 et seq., is a cooperative State and Federal program to provide medical assistance to needy individuals. See *Massachusetts Hosp. Ass'n* v. *Department of Pub. Welfare,* 419 Mass. 644, 646 (1995); *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. 466, 467 (1985). A State that chooses to participate in the Medicaid program must develop and submit for Federal approval a State plan that complies with the Federal Medicaid Act, and its implementing regulations, 42 C.F.R. § 447.200 (1987). *Massachusetts Hosp. Ass'n, supra*; *Haley, supra*; *Sargeant* v. *Commissioner of Pub. Welfare,* 383 Mass. 808, 815 (1981). See *Schweiker* v. *Gray Panthers,* 453 U.S. 34, 37 (1981) (State Medicaid plans "must comply with requirements imposed by the [Social Security] Act itself and by the Secretary of Health and Human Services"). The division must follow the requirements of Federal law for the availability of Federal financial reimbursement unless State legislation explicitly directs otherwise. *Youville Hosp.* v. *Commonwealth,* 416 Mass. 142, 146 (1993). Consistent with our Legislature's intent that the State Medicaid program comply with the Federal statutory and regulatory scheme, *Haley, supra* at 472, the State plan was submitted for and received Federal approval, which is binding until any amendments to the plan receive Federal approval. *Id.* at 467.

The extensive Federal and State regulations governing the Medicaid program are intricate, and we describe the relevant regulations in broad terms. Federal law requires States participating in the Medicaid program to provide assistance to "categorically needy" or to "medically needy" individuals.[7] In each case, a State is required to base its assessment of

[7]The "categorically needy" are those persons whom Congress considered deserving of public assistance, for example people who receive assistance from the aid to families with dependent children (AFDC) or supplemental security income (SSI) programs. See 42 C.F.R. §§ 435.100-435.236 (1996). A "medically needy recipient" is a person whose income is too great to en-

financial need only on "such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant or recipient" (emphasis added). 42 U.S.C. 1396a(a)(17)(B).

In determining whether a "long-term-care" case such as Tarin[8] is eligible for Medicaid, and to determine the level of benefits to be provided to him, his marital status is relevant.

*Eligibility for Medicaid.* As required by Federal law, all applicants for and recipients of Medicaid must meet certain financial eligibility requirements. 130 Code Mass. Regs. § 505.010 (1995). For an applicant who is *married,* the division must first assess the "total value of the resources" owned by both the person seeking Medicaid and his spouse, 42 U.S.C. § 1396r-5(c)(1)(A), referred to as the couple's "combined countable assets." 130 Code Mass. Regs. § 505.180(A)(1) (1996). At the time the division first computes eligibility, it considers all the resources held by each spouse, to be available to the Medicaid applicant, referred to as "the couple's current total countable assets." 130 Code Mass. Regs. § 505.180(B)(1) (1996). From the couple's current total countable assets the division sets aside an "asset allowance" which the applicant's spouse may use for her own maintenance. 42 U.S.C. § 1396r-5(c)(2). 130 Code Mass. Regs. § 505.180(B).[9] If, after setting aside the prescribed "asset allowance" for his spouse, an applicant has "available" assets that are greater than the permitted

able him to qualify as categorically needy, but whose medical costs are substantial enough to require assistance from the Medicaid program. See 42 C.F.R. §§ 435.300-435.350 (1996). (We use the male pronoun throughout our description of the Medicaid program because the recipient in this case is a man.) Recipients qualify for Medicaid only after they reduce their assets and their income to the basic level of exempt resources by paying for certain medical expenses. This is often referred to as the recipient's "spending down" his assets and income. See, e.g., *Himes* v. *Shalala,* 999 F.2d 684, 686 (2d Cir. 1993).

[8]The Medicaid program distinguishes between a "community case[]," a recipient who remains in the community and receives Medicaid assistance for occasional and acute medical services, and a "long-term-care case," a recipient who must reside in a licensed nursing facility or other institution. 130 Code Mass. Regs. § 506.010 (1994).

[9]The asset allowance is the greatest of the following amounts: (1) one-half of the couple's total combined countable assets, provided that it does not exceed $76,740;

(2) $15,348 if the total combined countable assets of the couple are be-

maximum, he must "spend down" the remainder of the married couple's combined assets until he reaches the one-person asset limit of $2,000.[10] See 130 Code Mass. Regs. § 505.180(B)(3); 130 Code Mass. Regs. § 505.115 (1995) (asset reduction provision).

In contrast, in determining the eligibility for Medicaid of a *divorced* applicant,[11] the division does not take into consideration any of the assets of his former spouse. Because Tarin transferred all his assets to his former wife in connection with his divorce, he was not required to "spend down" any of these assets to become Medicaid eligible.

As part of the initial eligibility determination, the division also scrutinizes an applicant's income to determine whether it is below statutory or regulatory limits. 42 C.F.R. § 435.831 (1996); 130 Code Mass. Regs. § 506.010 (1994). Once again, for a *married* applicant, the division calculates the countable income, taking into account income from all sources.[12] It then allows certain specified deductions for the maintenance of the applicant's spouse and any dependent or minor children. 130 Code Mass. Regs. §§ 506.010 (1994). 130 Code Mass. Regs. 506.220(B)-(C) (1996). This calculation results in a net income amount. 130 Code Mass. Regs. 501.500 (1996).[13] If the net income is above a specified "income standard" (currently set by the division at $60 a month), 130 Code Mass. Regs.

tween $15,348 and $30,696; (3) the amount of the couple's total countable assets, if the combined total amount is $15,348 or less; (4) a court-ordered amount; (5) an amount determined after a fair hearing before the division's board of hearings. See 130 Code Mass. Regs. § 505.180(A)(5) & 505.180(B)(2) (1996).

[10]The "total value of countable assets" owned by an applicant such as Tarin "may not exceed" $2,000 for one person. 130 Code Mass. Regs. § 505.110 (1995).

[11]We use the term "divorced" applicant or recipient because Tarin is divorced. The same regulations apply to all unmarried persons.

[12]The regulations provide that "[e]ach spouse has financial responsibility for the other," 130 Code Mass. Regs. § 505.450, unless the applicant is either an AFDC or SSI recipient, and lives apart from his spouse because he is in a long-term care facility, in which case the income of his spouse is not included to determine eligibility. 130 Code Mass. Regs. § 505.450(A)(2) (1995).

[13]"Net MA income" is defined as "gross income less applicable income deductions allowed under 130 [Code Mass. Regs. §§ ] 506.100 through 506.220(A)." 130 Code Mass. Regs. § 501.500 (1996).

§ 506.420 (1996), the applicant must "spend down" his net income until it falls below the limit. 130 Code Mass. Regs. § 506.610-506.620 (1994).

The division follows the same procedure when evaluating the income eligibility of a *divorced* applicant, with one exception: because spousal and family maintenance allowance deductions are available to an applicant only "for the maintenance needs of his or her spouse in the community" and for minor or dependent children who "reside with the community spouse," these deductions are not available to a divorced applicant such as Tarin. 130 Code Mass. Regs. § 506.220(B), (C) (1996).[14]

*Benefits paid by Medicaid.* Once an applicant has demonstrated Medicaid eligibility, the division establishes the amount Medicaid will pay on his behalf. In determining how much income Tarin has "available" to pay for his nursing home care, the division first calculates his "countable income." "Countable income" is defined as "all monies, earned or unearned, that are included for eligibility determination." 130 Code Mass. Regs. § 505.200 (1996). The "patient paid amount" — the amount paid by the patient — is his "countable income" less any expressly allowed deductions for his personal or family needs. 130 Code Mass. Regs. § 506.220 (1994). Any qualifying amount due to a long-term care facility which is not satisfied by the "patient paid amount" is paid for by the Medicaid program.

If the recipient is married, the division follows the same procedure used when determining initial Medicaid eligibility, and deducts an amount for spousal and family maintenance needs allowance (if the recipient has minor or dependent children). 130 Code Mass. Regs. § 506.220(A)-(C). If the Medicaid recipient is divorced, the spousal and family maintenance deductions are not available to him.

In summary, as a result of his divorce Tarin's assets and

---

[14]The "community spouse" is defined as "the spouse of an institutionalized spouse." 42 U.S.C. § 1396r-5(h)(2) (1994). An institutionalized spouse is "an individual who (A) is in a medical institution or nursing facility . . . *and* (B) is married to a spouse who is not in a medical institution or nursing facility" (emphasis added). 42 U.S.C. § 1396r-5(h)(2). *Id.* When Tarin's divorce became final, Mary Jane Tarin ceased being his "community spouse," and the division disallowed the "family maintenance needs allowance" that Tarin had claimed.

income alone are considered for the purposes of Medicaid eligibility and benefits determination; he need not account for any resources of his former spouse. Correspondingly he may not claim any deductions for any spousal or family allowance.

### III

Tarin claims, first, that the Medicaid statutes and regulations unconstitutionally discriminate against divorced Medicaid recipients and their children who depend on them for support. Second, he argues that the division misinterpreted the applicable statutes and regulations by determining that the money which he is required to pay for court-ordered child support is "available" to him for purposes of calculating his "patient-paid" amount. We address his statutory claims first.

In Tarin's view the Superior Court judge was incorrect to rely on the "imprecise" wording of the Medicaid statute and on the rulings of several Federal courts that have interpreted the question of "availability" at issue here. Because, he says, Massachusetts law is "overwhelmingly" in favor of exempting child support payments as "countable" income in public benefit cases, he urges us to rule as a matter of law that his child support obligations should not be treated as income "available" to him.

In reviewing the division's decision our standard is "to determine whether the agency conformed with the controlling statute. . . . We are limited to a determination whether the State action is arbitrary, capricious, or contrary to law." (Citations omitted.) *Massachusetts Hosp. Ass'n* v. *Department of Pub. Welfare,* 419 Mass. 644, 652 (1995). Neither the Federal nor the State Medicaid statute explicitly prohibits the deductibility of court-ordered child support. In the absence of any specific legislative intent to prohibit such deductions, he says, the division should not be permitted to do so.

While there is no statutory prohibition, Congress has expressly delegated to the Secretary of the United States Department of Health and Human Services the authority to define the meaning of the term "available" income. 42 U.S.C. § 1396a(a)(17)(B). Where the Secretary has done so, those regulations are "entitled to more than mere deference or weight." *Batterton* v. *Francis,* 432 U.S. 416, 426 (1977). The

Secretary's definition is entitled to "legislative effect" because "[i]n a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term." *Id.* at 425. See *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 43 (1981) ("[p]erhaps appreciating the complexity of what it had wrought, Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act").

Federal regulations concerning income exemptions available to Medicaid recipients do not provide an exemption for child support payments when the Medicaid recipient is not living with his spouse. See 42 C.F.R. §§ 435.831-435.832. The division argues, and we agree, the Secretary has made it clear that income "available" to a divorced Medicaid recipient may include income used to make court-ordered child support payments. See *Himes* v. *Shalala*, 999 F.2d 684, 689-691 (2d Cir. 1993) (citing Federal Health Care Financing Administration's State Medicaid Manual Transmittal No. 33); *Emerson* v. *Steffen*, 959 F.2d 119, 122-123 (8th Cir. 1992) (citing the Secretary's regulations at 42 C.F.R. § 435.851 and 42 C.F.R. § 435.401). The State regulations mirror the Federal income exemptions and, like the Federal regulations, do not exempt income received to make child support payments. See 130 Code Mass. Regs. § 505.230 (1994).[15] We do not agree with Tarin that we should infer a deduction for child support for divorced Medicaid recipients from the absence of any express language prohibiting such a deduction. Provided that the division does not act improperly, judicial deference requires that we not substitute our judgment for that of the agency charged with the administration of the legislative mandate. *American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 480, cert. denied, 464 U.S. 850 (1983).

[15]The division's regulations concerning exemptions from a recipient's income do not depart in any respect from the income exemptions set forth in Federal law. See 130 Code Mass. Regs. 505.000-505.460. The division considers "only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C. § 1396a(a)(17)(B). By regulation and the terms of its State plan, the division includes all income that the Secretary considers to be "available" to the recipient, and exempts only income that the Secretary considers to be unavailable. See 130 Code Mass. Regs. § 505.200 (1995); 130 Code Mass. Regs. § 505.230 (1994).

Three United States Circuit Courts of Appeals that have considered the matter all have upheld the disallowance of deductions for court-ordered child support payments for a Medicaid income availability determination. See *Himes* v. *Shalala, supra* at 690-691 (inclusion of child support payments in "available" income is "reasonable attempt to interpret and apply all sections of the statute"; Secretary's interpretation "is not at odds with the plain meaning of the statute, is reasonable, and should therefore be accorded the usual deference"); *Peura* v. *Mala,* 977 F.2d 484, 491 (9th Cir. 1992) ("high degree of deference" is owed to Secretary's determination); *Emerson* v. *Steffen, supra* at 123 ("[a]lthough not directly defining the term 'available,' the regulations make it plain that . . . states do not have to exclude [child support] payments from income when determining Medicaid eligibility . . .").[16]

Moreover, these Federal courts concluded that the Secretary's determination to include child support payments in calculating "available" income was consistent with the legislative history of the statute. See *Himes, supra* at 689 ("[w]hen Congress spoke of actually available income, it indicated its concern about the unfounded attribution of income from relatives" never received by needy individuals, a "prevalent state practice" at time); *Emerson, supra* at 121-123 ("Congress was concerned not with whether income received and then paid out by a Medicaid recipient was available, but rather with whether income deemed received had actually been received by, and therefore was actually available to, the

[16]Tarin argues that two other opinions of the United States Court of Appeals for the Ninth Circuit support his position. *Department of Health Servs. of Cal.* v. *Secretary of Health & Human Servs.,* 823 F.2d 323, 327-328 (9th Cir. 1987) (California could treat court-ordered spousal and child support payments as unavailable to Medicaid recipients) and *Whaley* v. *Schweiker,* 663 F.2d 871 (9th Cir. 1981) (SSI recipient's "available" income did not include increase in his veterans' benefits which had been provided for support of his children). His reliance is misplaced. In *Peura* v. *Mala,* 977 F.2d 484 (9th Cir. 1992), the court clarified that its holding in *Department of Health Servs., supra,* did not require the State to exclude the *entire* amount of court-ordered child support payments in determining "availability," and rejected dicta that suggested as much. The court also made clear that its decision in *Whaley* was not controlling because in *Peura,* unlike *Whaley,* there was no indication that the amount of child support had been determined taking into account the purposes and limitations of the Medicaid program. *Peura, supra* at 489-491.

recipient"); *Peura, supra* at 491 (legislative history did not "foreclose[]" Secretary's interpretation; Medicaid statute "is ambiguous on whether the entire amount of court-ordered child-support payments must be considered unavailable income").

We recognize that in both *Himes* and *Emerson* the courts were reviewing the Secretary's determination of a recipient's "available" income for the purpose of establishing only eligibility for Medicaid, and not benefit levels, the issue in this case.[17] However, in *Peura*, the plaintiff, like Tarin, challenged a State's determination of required payments for nursing home costs. In upholding the Secretary's determination, the United States Court of Appeals for the Ninth Circuit concluded that it was "of little import" that the Secretary's determination regarding Peura's child support obligations came "in the context of a post-eligibility determination." *Peura, supra* at 487 n.4. See *Ussery* v. *Kansas Dep't of Social & Rehabilitation Servs.*, 258 Kan. 187 (1995), upholding the inclusion of court-ordered spousal support payments in a Medicaid recipient's "available" income in establishing benefit levels.

We conclude that the division's decision to include Tarin's child support payments in his "available" income is not arbitrary, capricious, or contrary to law. Tarin does not argue, and nothing in the record indicates, that the amount he agreed to pay for child support, approved without change by the Probate and Family Court, is necessary to maintain his children adequately. Cf. *Schweiker* v. *Gray Panthers*, 453 U.S. 34, 49 n.21 (1981) ("We do not . . . decide whether state plans that set aside inadequate sums for the contributing spouse are consistent with other provisions of the statute, such as the requirement that States 'reasonabl[y] evaluat[e] . . . income or resources.' 42 U.S.C. § 1396a[a][17][C]"). Tarin argues only that the child support payments are "court ordered" and

---

[17]The plaintiffs in *Emerson* v. *Steffen*, 959 F.2d 119, 121 (8th Cir. 1992), included both applicants and recipients of Medicaid. However, in discussing "available" income, the court referred generally only to Medicaid eligibility criteria and did not distinguish between eligibility and benefit levels. *Id.* In commenting on *Emerson*, the court in *Peura* noted that 42 U.S.C. § 13^6a(a)(17) concerns both applicants for and recipients of Medicaid and "its restrictions apply to both eligibility determinations and post-eligibility determinations regarding the extent of assistance," *Peura, supra* at 487 n.4.

therefore — without more — must be excluded from his "available" income. Tarin could have agreed to pay his former wife *any* amount of child support and, in his view, the Medicaid program would be required to allow him to deduct those amounts from his "available" income. We agree with the Commonwealth that what Tarin seeks is in reality a Medicaid "subsidy" for his child support payments. See *Peura, supra* at 490 ("we think it unlikely that Congress would intend the full amount of any child-support obligation to be excluded from the 'available' income of a Medicaid applicant or recipient simply because the amount has been ordered by a court").

We are not unmindful of the reality in our contemporary society that many marriages end in divorce, and that responsibility for the support of children continues after divorce. We recognize that it is important — indeed urgent — for parents to meet their child support obligations. Here, however, Tarin asks that one source of Federal funds — Medicaid — be used in a way which the Secretary, taking into account all sources of Federal funds including supplemental security income (SSI) and aid to families with dependent children (AFDC) that are available to assist needy children, has determined is not appropriate. If the Medicaid regulations need to be adjusted to counter any particular hardship on needy children of divorced families, that task is for administrators and legislators. They can balance the interests in ways that courts, in deciding on the particular facts of a single case, cannot. We find the regulations at issue consistent with the statutory scheme and with the reasonable exercise by the division of its authority.

IV

We turn now to Tarin's constitutional claims. Tarin's first constitutional argument is based on equal protection grounds. He argues that the distinction recognized by the division between married and nonmarried recipients in determining a recipient's "available" income is analogous to a governmental classification based on the "illegitimacy" of children. Because the latter is subject to strict scrutiny for equal protection analysis, he argues, the former should be as well. We disagree.

As a preliminary matter, Tarin incorrectly frames his argu-

ment in terms of his children's equal protection rights. As the legislative history makes clear, it is Tarin who is the intended beneficiary of the Medicaid program, and the proper classification for purposes of equal protection analysis "must begin with the statutory classification itself." *Califano* v. *Boles*, 443 U.S. 282, 294 (1979). While "every governmental benefit has a ripple effect through familial relationships," *id.* at 295, it is Tarin's Medicaid benefits, and not his children's, which are at issue. Although it may be that the Medicaid subsidies received by Tarin incidentally benefit his children, "[s]ome limits must be imposed for purposes of constitutional analysis." *Id.* at 296. Accordingly we consider the Medicaid regulations at issue in terms of his rights.

The equal protection clauses of the Fourteenth Amendment to the United States Constitution and art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments, "do not protect against burdens and disabilities as such but against their unequal imposition." *Opinion of the Justices*, 423 Mass. 1201, 1232 (1996). In enacting social welfare legislation, "a government does not deny equal protection 'merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' " *Mathews* v. *DeCastro*, 429 U.S. 181, 185 (1976), quoting *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970).

Statutes providing for governmental payments of monetary benefits have been "entitled to a strong presumption of constitutionality" when challenged on equal protection and due process grounds. *Mathews* v. *DeCastro, supra* at 185. See *Jefferson* v. *Hackney*, 406 U.S. 535, 546 (1972) ("[s]o long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straightjacket"); *ABCD, Inc.* v. *Commissioner of Pub. Welfare*, 378 Mass. 327, 340-341 (1979) (State welfare statute did not violate equal protection; "[c]lassifications that are less than perfect or that solve only part of a problem have been upheld").

We conclude that the Secretary and the division have a rational basis for differentiating between divorced Medicaid recipients and those who are married. Congress explicitly

authorizes State Medicaid programs to "take into account the financial responsibility" of the spouse, 42 U.S.C. § 1396a(a)(17),[18] and the division has recognized that "[e]ach spouse has financial responsibility for the other." 130 Code Mass. Regs. § 505.450(A) (1995). Because no contribution is required from an applicant's former spouse if the applicant is divorced, and because the former spouse's assets are not included when determining a recipient's eligibility for benefits, it is rational for the division correspondingly to disallow a deduction for the family's maintenance needs. Tarin's own case is illustrative. As a divorced recipient, none of the assets that he transferred to his former spouse was considered by the division in determining either his Medicaid eligibility or his benefit level. All those assets can be used for the benefit of his former wife and their children with no requirement that they be "spent down" to establish his Medicaid benefits. Were we to agree with him, Tarin would in this respect be in a better position than a married Medicaid recipient.

Tarin further argues that the regulation impermissibly impairs his liberty interest in his relationship as a father to his children protected by the due process provisions of the State and Federal Constitutions because the State is interfering with his ability financially to support his children.

The rights associated with the family — the right of an individual "to marry, establish a home and bring up children" — have long been protected as part of the liberty guaranteed by the due process clause. *Meyer* v. *Nebraska,* 262 U.S. 390, 399 (1923). See *Zablocki* v. *Redhail,* 434 U.S. 374 (1978); *Moore* v. *East Cleveland,* 431 U.S. 494 (1977); *Pierce* v. *Society of Sisters,* 268 U.S. 510 (1925). We recognize that parents "possess a fundamental liberty interest, protected by the Fourteenth Amendment, to be free from unnecessary governmental intrusion in the rearing of their children." *Curtis* v. *School Comm. of Falmouth,* 420 Mass. 749, 755 (1995), cert. denied, 516 U.S. 1067 (1996). We have also recognized that "in order to constitute a constitutional violation, the State action at issue must be coercive or compulsory in nature. Coercion exists where the governmental action is mandatory and provides no outlet for the parents, such as where refusal

---

[18]A challenge to State Medicaid plans that considered a spouse's income in determining Medicaid eligibility and benefits has been denied. *Schweiker* v. *Gray Panthers,* 453 U.S. 34 (1981).

to participate in a program results in a sanction or in expulsion." *Id.* at 757.

Here the State's disallowance of a child support deduction from Tarin's patient-paid amount does not constitute the invasion of liberty interests that the Constitution forbids. When any parent has a serious, disabling illness, the financial hardship inflicted on his or her children can be, and often is, severe. We recognize that, as an institutionalized person with such an illness, Tarin has reduced opportunities to participate actively in the lives of his children, and that paying for their support is a responsibility that he earnestly desires to continue. But the State is "not constitutionally obligated to use the Social Security Act to subsidize support payments." *Mathews* v. *DeCastro, supra* at 189. Tarin may continue to nurture his children and to participate in decisions concerning their education, their medical needs, or other matters of their care and management. That he may no longer have the financial resources to support them in the manner to which he once agreed does not mean that the State has placed any coercive constitutional burden on him.

*Judgment affirmed.*