Henry, Bruce R., J.
Pursuant to Rule 12(c), the plaintiff, Marian Nogrady (“Nogrady”), seeks judicial review of the defendant, the director of the Office of Medicare, Executive Office of Health and Human Services, Terence G. Dougherty’s (“Dougherty”) decision to uphold the denial of long-term care Medicaid benefits for her mother, the now-deceased Ann M. Lulich (“Lulich”). This matter is before the court on Nogrady’s Motion for Judgment on the Pleadings. For the following reasons, Nogrady’s motion is ALLOWED and the matter is REMANDED for further proceedings consistent with this decision.
BACKGROUND
On March 1, 2009, Lulich, who at the time was ninety-nine years old, was hospitalized after a fall. On March 16,2009, she was transferred from the hospital to a nursing facility. Prior to her fall, Lulich had lived with Nogrady and her husband Michael Nogrady (“Michael”) for twenty-six years at their home in Newton, Massachusetts.
On May 11, 2009, Lulich executed a Durable Power of Attorney, naming Nogrady as her attorney-in-fact, and Michael as successor attomey-in-fact. Also on May 11th, Lulich paid Nogrady and Michael $198,567 in consideration for a one-third ownership in their house. The price was based on the real estate tax assessment value as determined by the Real Estate Tax Assessor for the City of Newton, and reflected one-third of the property’s assessed value at the time of purchase. Nogrady and Michael deeded title to their home to themselves as tenants-by-the-entirety and to Lulich as a joint tenant with right of survivorship. The deed incorrectly described the tenancy, and Nogrady and Michael later executed a confirmatory deed to correct the original deed. The confirmatory deed, executed in August 2009, re-conveyed to Nogrady, Michael, and Lulich all of the property as joint tenants with right of survivorship, and was signed only by Nogrady and Michael. An Open-End mortgage, available to Nogrady and Michael, encumbered the property.
On July 23, 2009, MassHealth received Lulich’s application for long-term care Medicaid benefits. Lulich was evaluated by a third-party provider under contract with MassHealth, who determined that Lulich would need nursing home services for more than six months. On November 19, 2009, MassHealth denied Lulich’s application for benefits after determining that her payment of the $198,567 to Nogrady and Michael was disqualifying.
On December 2, 2009, Lulich timely filed an appeal of MassHealth’s denial with the Board of Hearings. The hearing occurred on March 2, 2010, and a decision denying Lulich’s appeal was issued on September 27, 2010. Lulich moved for judicial review on October 22, 2010. On February 15, 2011, Lulich died, and Nogrady was substituted as the plaintiff in June 2011.
DISCUSSION
Standard of Review
The review of the defendant’s decision is defined by G.L.c. 30A, §14, which states that the court may “either affirm, remand, set aside or modify an agency’s decision ... if it determines that the substantial rights of any party may have been prejudiced because the agency’s decision is: (a) in violation of constitutional provisions: or (b) in excess of the statutory authority or jurisdiction of the agency; or (c) based upon an error of law; or (d) made upon unlawful procedure; or (e) unsupported by substantial evidence; or (f) unwarranted by facts found by the court on the record as submitted or (g) arbitrary and capricious, an abuse of discretion or otherwise not in accordance with the law.” Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). The plaintiff bears the burden of proof on appeal. Brackett v. Civil Service Comm’n, 447 Mass. 233, 242 (2006). In reviewing an agency decision, the court is required to “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it” by statute. G.L.c. 30A, §14(7); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Reg’l Vocational Sch. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982).
Denial of Benefits
“Medical assistance is a cooperative Federal and State program which provides payment for medical services to eligible individuals and families.” Haley v. Commissioner of Pub. Welfare, 394 Mass. 466, 476 (1985) (citation omitted). “In order to receive Federal funding under the Social Security Act, 42 U.S.C. §1396 et seq. (1982), the State program must be approved and must meet all the requirements of the Federal Act and its implementing regulations.” Cruz v. Commissioner of Pub. Welfare, 395 Mass. 107, 112 (1985) (citations omitted). “As required by Federal law, all applicants for and recipients of Medicaid must meet certain financial eligibility requirements.” Tarin v. Commissioner of Div. of Med. Assistance, 424 Mass. 743, 747 (1997). Federal law requires that the state eligibility requirements “shall be no more restrictive than the methodology which would be employed under the supplemental security income program in the case *205 of groups consisting of aged, blind, or disabled individuals . . 42 U.S.C. § 1396a(a)(10)(C)(i)(III).
State regulations require that “the total value of countable assets owned by or available to individuals applying for or receiving MassHealth . . . may not exceed . . . $2,000.” 130 CodeMass.Regs. §520.003(A)(1). “Countable assets are all assets that must be included in a determination of eligibility.” 130 CodeMass.Regs. §520.007. “All real estate owned by the individual . . . with the exception of the principal place of residence ... is a countable asset.” 130 CodeMass.Regs. §520.007(0(1). However, “the value of such real estate is exempt for nine calendar months after the date of notice by the MassHealth agency, provided that the individual signs an agreement with the MassHealth agency within 30 days after the date of notice to dispose of the property at fair-market value.” Id. at 520.007(G)(2).
Fair market value is “an estimate of the value of a resource if sold at the prevailing price.” 130 CodeMass.Regs. §515.001. MassHealth requires that an applicant who owns real estate at the time of the application provide evidence of the fair-market value of the real estate by submitting a “copy of the most recent tax bill or the property tax assessment that was most recently issued by the taxing jurisdiction . . .” 130 CodeMass.Regs. §520.007(G)(3)(a). MassHealth “considers any transfer during the appropriate lookback period ... for less than fair market value a disqualifying transfer . . .” 42 U.S.C. §1396p(c)(1)(A); 130 CodeMass.Regs. §520.019(C).
“A disqualifying transfer may include any action taken that would result in making a formerly available asset no longer available." 130 CodeMass.Regs. §520.019(C). “Action taken to avoid receiving a resource may include . . . agreeing to the diversion of a resource.” Id. When a disqualifying transfer occurs, MassHealth calculates and imposes a period of ineligibility unless “the resources were transferred exclusively for a purpose other than to qualify for MassHealth” or the individual “intended to dispose of the resource at either fair-market value or for other valuable consideration.” 130 CodeMass.Regs. §§520.019(F), (G).
At Lulich’s appeal hearing, the hearing examiner determined that by purchasing a one-third interest in Nogrady’s home, Lulich agreed to a diversion of a resource, and that therefore the transfer was disqualifying. The hearing examiner based her decision on several factors, including that (1) she felt Lulich did not receive fair-market value for her cash, and (2) Lulich no longer resided at the property and did not intend to return there.
Nogrady argues that the hearing examiner improperly denied Lulich long-term care benefits by incorrectly classifying the purchase of interest in Nogrady’s home as a disqualifying transfer. Nogrady asserts that Lulich did receive fair-market value for her cash in the form of an interest in Nogrady’s home, and that therefore the transaction was not a diversion of a resource. Nogrady further asserts that this property was subject to a qualified residence exemption, or alternatively, should the court find that the property was not Lulich’s residence, that the property was subject to the nine-month real estate exemption.
Fair-Market Value
In her appeal decision, the hearing examiner stated that determining fair-market value “entails much more than simple division of a tax assessed value” in certain cases. She stated that the fact that the sale was between relatives, that there was a mortgage on the property, and that Lulich would never again reside at the property were factors in determining the fair-market value. However, the hearing examiner cited no law or regulation to support these statements. Mass-Health regulations specifically define fair-market value as “an estimate of the value of a resource if sold at the prevailing price,” and state that a “copy of the most recent tax bill” or the most recent properly tax assessment are sufficient evidence to show fair-market value. 130 CodeMass.Regs. §§515.001, 520.007(G)(3)(a). As the price Lulich paid for her one-third interest in the property was equal to one-third of the real estate tax assessment value, it is evident that she received fair-market value for her cash according to the MassHealth regulations.
The factors considered by the hearing examiner, that the sale was between relatives and that Lulich might never return to the residence, do not affect the fair-market value of the property, as they have no bearing on the property interest itself. A one-third share of a joint tenancy with right of survivorship is a legitimate interest in real properly. Therefore, Lulich did not divert an available resource, but exchanged it for a resource of equal value. The hearing examiner failed to appropriately apply the relevant MassHealth regulations, and erred in determining that the purchase of the property was disqualifying as a diversion of a resource.[3] As such, Lulich was entitled to either the nine-month exemption that applies to all real-estate other than the home, or to the total qualified home exemption.
Intent to Reside
To determine whether the property qualified as Lulich’s home, it is necessary to determine whether Lulich intended to return to that property after completing her time in the nursing home. MassHealth regulations require that a home may only become a countable asset when the applicant or member moves to a nursing home if “(t]he applicant or member . . . moves out of his or her home without the intent to return.” 130 CodeMass.Regs. 520.007(G)(8). The hearing examiner considered Lulich’s intent to return to the property from the nursing home during her evaluation of the nature of the transaction. While an affidavit signed by Lulich stating her intent to return *206 home from the nursing home was submitted as evidence at the hearing, the hearing examiner looked to several other factors she considered to be relevant.
It appears that one of the primary factors considered was the execution of the confirmatory deed, which Nogrady and Michael executed without Lulich’s signature and without Nogrady signing on Lulich’s behalf as her power of attorney. However, it appears that the hearing examiner did not fully understand the nature of a confirmatory deed. A confirmatory deed is executed only to correct a title defect in the original deed, and does not actually pass title. Scaplen v. Blanchard, 187 Mass. 73, 76 (1904). “Confirmation is the approbation or assent to an estate already created, which, as far as it is in the confirmer’s power, makes it good and valid.” Id. (internal quotations omitted). In her decision, the hearing examiner failed to acknowledge this distinction, and discussed the confirmatory deed as if it were an ordinary deed conveying title. She based her analysis on the idea that because Lulich failed to sign the confirmatory deed modifying the tenancy, that Lulich had no true interest in the property. This analysis is incorrect.
While it is true that the confirmatory deed modified the language describing the tenancy, the modification simply corrected the language to reflect the original intent of the parties. The wording on the original deed, which stated that Nogrady and Michael were tenants-in-the-entirety and Lulich was a joint tenant, granted Lulich half of the property, rather than a third. As Lulich paid a third of the total fair-market value for the property, it is evident that the intent was for Lulich to own one-third, rather than half, of the property. Modifying the language so that it describes all parties as joint tenants achieved this division. Therefore, as the confirmatory deed neither conveyed title to Lulich nor affected her property interest, her failure to sign the confirmatory deed does not support a finding that she did not have a true interest in the property, or that she did not intend to return to reside at the property upon release from the nursing home.
The hearing examiner also looked to Lulich’s age and to the fact that it was likely she would die in the nursing home when analyzing the validity of the property transaction. However, these factors are not relevant in the MassHealth regulations, and by considering them, the examiner exceeded the scope of her authority. MassHealth regulations state that ”[t]he home of the applicant or member ... if located in Massachusetts and used as the principal place of residence, [is] considered [a] noncountable asset[].” 30 CodeMass.Regs. §520.008(A). The MassHealth regulations do not further define a principal place of residence, but, as stated above, they consider the intent of the applicant or member to return home. 130 CodeMass.Regs. 520.007(G)(8).
Based on the plain language of the regulations, it appears that Nogrady’s home should still have been considered Lulich’s home at the time of her application, as it had been her primary place of residence for twenty-six years, she had an ownership interest in the property, and her affidavit clearly states that she wanted to return there from the nursing home. Additionally, as the federal Medicare law requires that the state programs be no more restrictive than the supplemental security income (“SSI”) program, the court finds Nogrady’s use of the SSI Program Operations Manual (“POM”) to be persuasive in clarifying the definition of home. See 42 U.S.C. § 1396a(a)(10)(C)(i)(III). According to the POM, ”[a]n individual’s principal place of residence is the dwelling the individual considers his or her established or principal home and to which, if absent, he or she intends to return.” SSI POMS §01130.100A(2), citing 20 CodeFed.Regs. 416.1210, 416.1212. The POM states that the applicant should express her intent to return home, and explains that factors such as age and physical condition should not be considered in determining intent, even if a doctor states he does not believe the applicant would be able to return home. SSI POMS §01130.100(E), citing 20 C.F.R. 416.1210, 416.1212. Therefore, it appears that, in addition to simply being outside the scope of the MassHealth regulations, the factors considered by the hearing examiner were specifically not intended to be used in determining Lulich’s intent to return home.
As Lulich had an ownership interest in the property where she had lived for twenty-six years and expressed her intent to return there from the nursing home, the property should have been considered her home, and therefore a non-countable asset. The hearing examiner therefore erred by imposing a period of ineligibility. Therefore, Nogrady’s Motion for Judgment on the Pleadings is ALLOWED.[4]
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiff Nogrady’s Motion for Judgment on the Pleadings be ALLOWED and the matter is REMANDED to the Office of Medicare for proceedings consistent with this decision.

 In making her determination that the purchase was a disqualifying transfer, the hearing examiner also considered the nature of a joint tenancy. She speculated that it would be difficult for Lulich to petition for partition should it become necessary, and that because the property would pass directly to Nogrady and Michael should Lulich predecease them, this would prevent MassHealth from recovering the property from Lulich's estate. The hearing examiner exceeded the scope of her authority in making these considerations, as they were mere speculations based on potential future events. Additionally, as there is no regulation preventing the purchase of a joint tenancy, but there is a regulation allowing the purchase of a life estate — a property interest which MassHealth would definitely be unable to recover from the estate — this court finds the hearing examiner’s argument unpersuasive. See 130 CodeMass.Regs. 520.019(I)(3).

 The court also acknowledges Nogrady’s due process claim, but because her motion Is allowed and the case remanded to the Office of Medicare, the court does not need to address the merits of the claim.