LUISA M. CRUZ vs. COMMISSIONER OF PUBLIC WELFARE.

Plymouth. December 4, 1984. — June 10, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Medicaid. Public Welfare,* Medical assistance benefits.

Although an applicant for medical assistance benefits, who was not a citizen of the United States or an alien lawfully admitted for permanent residence, had failed in proceedings in the Superior Court to raise the issue whether she was eligible pursuant to the "under color of law" provision of 42 C.F.R. § 435.402 (1984), it was held that the circumstances warranted consideration of the issue on appeal. [111-112]

In an action by an applicant for medical assistance benefits seeking review of a decision in the Department of Public Welfare denying her benefits because she had entered the United States as a nonimmigrant visitor and thus did not meet the eligibility requirements of 106 Code Mass. Regs. § 503.200 (1981), summary judgment was not appropriately entered against the applicant, where the State regulation was inconsistent with a Federal regulation, 42 C.F.R. § 435.402 (1984), providing eligibility for aliens "permanently residing in the United States under color of law," and where it appeared that the applicant might be eligible for benefits as such. [112-116]

CIVIL ACTION commenced in the Superior Court Department on October 18, 1982.

Motions for summary judgment were heard by *Robert L. Steadman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jordan H. F. Fiore* for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the Commissioner of Public Welfare.

O'CONNOR, J. This appeal involves a challenge to a regulation of the Massachusetts Department of Public Welfare that precludes certain nonimmigrant aliens from receiving medical assistance benefits (medicaid). The plaintiff, an alien who law-

fully entered the country in 1972 on a visitor's visa and who has resided here continuously since then, applied for medicaid in 1982. The Department of Public Welfare (Department) denied her application because the plaintiff did not meet the eligibility requirements of 106 Code Mass. Regs. § 503.200 (1981). After an appeals referee affirmed the Department's decision, the plaintiff filed a complaint in the Superior Court seeking judicial review of the Department's actions. See G. L. c. 30A, § 14. The parties filed cross motions for summary judgment. A Superior Court judge granted the Department's motion and denied the plaintiff's motion. Judgment was entered affirming the decision of the Department. The plaintiff appealed to the Appeals Court. We transferred the case to this court on our own motion.

The plaintiff does not contest the Department's conclusion that she is not eligible to receive benefits under 106 Code Mass. Regs. § 503.200. She argues, however, that the regulation is unenforceable in this case. First, she argues that the regulation is inconsistent with Federal regulations governing eligibility for medicaid, and that under the Federal regulations she is eligible to receive benefits. Second, she argues that the regulation violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. Finally, she argues that the regulation violates art. 106 of the Amendments to the Massachusetts Constitution (the Massachusetts Equal Rights Amendment). We agree with the plaintiff's contention that the State regulation does not comply with the requirements of the Federal statutory and regulatory scheme, so we reverse the allowance of the Department's motion for summary judgment. We do not agree that the record shows that the plaintiff is eligible for benefits as a matter of law, so we affirm the denial of the plaintiff's motion for summary judgment. We remand the case for further proceedings. Because we conclude that 106 Code Mass. Regs. § 503.200 does not comply with the Federal regulations, we need not decide whether it violates the Federal or State Constitutions.

The appeals referee made few findings of fact regarding the details of the plaintiff's relationship to this country. However,

the facts appear to be essentially undisputed, and we summarize them as they appear in the record and the briefs of the parties. The plaintiff and her mother, Maria Cruz, entered the country as visitors in 1972, when the plaintiff was a child. The plaintiff's mother decided to remain in the United States, and a relative petitioned the Immigration and Naturalization Service (INS) for adjustment of her status to that of permanent resident. The record does not disclose whether the plaintiff was included in that petition or whether it dealt only with the status of Maria Cruz. The INS denied the petition, and there was an appeal to the United States District Court for the District of Massachusetts. While that appeal was pending,[1] Maria Cruz married an American citizen. Her husband then filed a second petition for adjustment of status on her behalf. The petition was approved, and the plaintiff's mother was accorded permanent resident status.

The plaintiff then completed a petition to adjust her status based on her mother's newly acquired status.[2] However, before any action was taken on this petition, the plaintiff contracted a rare form of encephalitis, and in 1979, she slipped into a semi-comatose state. Because the prognosis for her survival was poor, and because of the likelihood that she would require public assistance if she did survive,[3] her family did not pursue the adjustment of status proceedings. However, the plaintiff has survived for over five years without any improvement in her condition.

---

[1] There is nothing in the record establishing the outcome of that appeal.

[2] It is not clear on the record whether a new petition was completed but never filed with the INS, or whether it was filed and then proceedings were suspended.

[3] An alien with temporary visitor status is not eligible for adjustment of status to permanent resident unless she would be eligible to receive an immigrant visa and would be admissible to the United States as a permanent resident. 8 U.S.C. § 1255(a)(2) (1982). An alien who is "certified by the examining surgeon as having a physical defect, disease, or disability . . . that . . . may affect the ability of the alien to earn a living . . ." or who is "likely at any time to become [a] public charge[ ]," is ineligible to receive a visa or to be admitted to the United States. 8 U.S.C. § 1182(a)(7)(15) (1982).

Initially, the plaintiff's medical expenses were paid through her mother's health insurance. That coverage ended on January 11, 1984, the plaintiff's twenty-second birthday. Anticipating that event, in 1982 an employee at the nursing home where the plaintiff is a patient filed an application for medicaid benefits on her behalf. The Department denied the plaintiff's application, because the plaintiff is "not an alien that was lawfully admitted as an immigrant with permanent residence" as required by 106 Code Mass. Regs § 503.200. That section provides in part:

"(A) *Requirements* To be eligible for Medical Assistance, an applicant or recipient must be one of the following:

"(1) a citizen of the United States; i.e., any individual born in the United States or its territories; born of a parent who is a U.S. citizen; or naturalized;

"(2) an alien lawfully admitted as an immigrant with permanent residence;

"(3) an alien lawfully admitted as a non-immigrant by statutory acknowledgement of continuous residence;

"(4) an alien lawfully admitted as a refugee with conditional entrance; or

"(5) a Canadian-born American Indian.

" . . . .

"Aliens lawfully admitted for a temporary purpose, such as students, visitors, and diplomats, shall not be eligible for Medical Assistance. . . ."

The appeals referee affirmed the Department's decision, stating "since there is no evidence indicating that the appellant's status has been changed to one of permanent resident, the Department decision to reject the application is found to be correct."

The plaintiff concedes that she does not meet the requirements of 106 Code Mass. Regs. § 503.200. She argues, however, that under cognate Federal regulations, which are binding on the States, she is eligible to receive benefits. Specifically, she relies on 42 C.F.R. § 435.402 (1984), which provides in part: "The [state] agency must provide Medicaid to otherwise eligible residents of the United States who are — (a) Citizens;

or (b) Aliens lawfully admitted for permanent residence or *permanently residing in the United States under color of law* . . ." (emphasis added). The plaintiff contends that, although she is not a citizen or an alien lawfully admitted for permanent residence, she is nevertheless permanently residing in the United States under color of law within the meaning of the Federal regulation.

We note initially that the plaintiff failed to raise the issue whether she was eligible pursuant to the "under color of law" provision of 42 C.F.R. § 435.402 in the Superior Court, and therefore is not entitled to raise the issue here. See, e.g., *Bondsville Realty Inc.* v. *Diamond International Corp.*, 360 Mass. 870 (1972). However, "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below[4]. . . . Rules of practice and procedure are devised to promote the ends of justice, not to defeat them." *Hormel* v. *Helvering,* 312 U.S. 552, 557 (1941). See *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 494 (1983). In this case, justice weighs in favor of considering the issue. The plaintiff has been denied benefits to which she may in fact be entitled under the applicable Federal regulations. It does not appear that the department will have been prejudiced by the plaintiff's failure to press this issue below. Compare *Albert* v. *Municipal Court of the City of Boston, supra* at 494 (authority would be unfairly prejudiced on rehearing due to necessity of

---

[4] The plaintiff was not required to raise this issue before the Department's appeal referee. Title 106 Mass. Regs. § 343.610 (C), which governs hearings before appeal referees, provides in part: "The [referee's] decision must be rendered in accordance with the law . . . Referees shall not render decisions which require their determination of the legality of the Department regulation. If the legality of the Department regulations is at issue, the referee shall render a decision that s/he cannot rule on that issue and shall base his decision on the applicable regulation." A party need not raise a claim before an administrative agency if the agency does not have the power to grant the relief sought. See, e.g., *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n,* 386 Mass. 64, 68-69 (1982).

locating witnesses many years after the events at issue). There-
fore, we will consider the issue although raised for the first
time on appeal.

"Medical assistance is a cooperative Federal and State pro-
gram which provides payment for medical services to eligible
individuals and families." *Haley* v. *Commissioner of Pub.
Welfare,* 394 Mass. 466, 467 (1985). In order to receive Federal
funding under the Social Security Act, 42 U.S.C. § 1396 et
seq. (1982), the State program must be approved and must
meet all the requirements of the Federal act and its implement-
ing regulations. *Id. Sargeant* v. *Commissioner of Pub. Welfare,*
383 Mass. 808, 815 (1981). See 42 U.S.C. § 1396, 1396a
(1982). General Laws c. 118E, § 1 (1984 ed.), established the
medicaid program for Massachusetts "pursuant to *and in con-
formity with* the provisions of Title XIX of the Social Security
Act (P.L. 89-97)" (emphasis added). "The language of this
section clearly indicates that the Legislature intended the
[medicaid] benefits program to comply with the Federal statut-
ory and regulatory scheme." *Haley* v. *Commissioner of Pub.
Welfare, supra* at 472. When there is a conflict between State
and Federal regulations, the Legislature intended that the De-
partment comply with the Federal rule. See *Holley* v. *Lavine,*
553 F.2d 845, 848 (2d Cir. 1977), cert. denied sub nom. *Shang*
v. *Holley,* 435 U.S. 947 (1978). Thus, if the plaintiff is perma-
nently residing in the United States under color of law within
the meaning of the Federal regulation, she is eligible to receive
medicaid benefits.

There are no decisions of the United States Supreme Court
interpreting the phrase "permanently residing in the United
States under color of law." However, several lower Federal
courts and other State courts have considered the question. For
example, in *Holley* v. *Lavine, supra,* the Court of Appeals for
the Second Circuit interpreted the phrase "permanently residing
in the United States under color of law" in the context of
Federal regulations governing eligibility for benefits under the
Aid to Families with Dependent Children program. See 45
C.F.R. § 233.50 (1984). The court held that the regulations
encompassed not only aliens permanently residing in this coun-

try under specific provisions of immigration law, but also aliens who were known by the INS to be residing in the United States unlawfully, but whom the INS in its discretion had chosen not to deport. The words "under color of law," the court reasoned, included "not only situations within the body of the law, but also others enfolded by a colorable imitation. 'Under color of law' means that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative agency or a legislative body uses the phrase 'under color of law' it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border." *Id.* at 849-850.

The court further reasoned that an alien could be "permanently" residing in the United States even though it was possible that the INS would eventually decide to deport. The court noted that the term "permanent," as defined in the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(31), "means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." *Id.* at 850, quoting 8 U.S.C. § 1101(a)(31).

In *Holley,* the State agency in charge of administering the program had received a formal letter from the INS which stated that "deportation proceedings [had] not been instituted . . . for humanitarian reasons" and that the INS did "not contemplate enforcing [the plaintiff's] departure from the United States at this time." *Id.* at 849. In the present case, Luisa Cruz did not provide the Department with a document indicating that the INS does not plan to deport her. However, several courts have applied the rationale of *Holley* to cases involving plaintiffs who had no formal expression of intent from the INS.

In *Velasquez* v. *Secretary of the Dep't of Health & Human Servs.,* 581 F. Supp. 16 (E.D.N.Y. 1984), a judge considered whether an alien who had entered the country as a nonimmigrant visitor and remained here illegally was permanently residing in the United States under color of law so as to be eligible for

Social Security benefits. The INS had commenced deportation proceedings against the plaintiff, and the plaintiff had filed an application for suspension of deportation. The INS granted the plaintiff permission to obtain employment during the pendency of the deportation proceedings. It failed to take any action with regard to the plaintiff's application for suspension of deportation, nor did it schedule a hearing on her deportation. Noting that there was no formal letter from the INS, as there was in *Holley,* the District Court judge concluded that the plaintiff had nevertheless established that she was permanently residing in the United States under color of law. The judge reasoned that evidence of the agency's history of inaction was sufficient to establish, at least prima facie, that the INS had acquiesced in her presence within the country. The judge further reasoned that considerations of fairness and public policy and of the relative positions of the parties supported placing on the defendant agency the burden of presenting evidence of the INS's intentions.

State courts that have considered the question have found the reasoning in *Holley* persuasive. For example, in *Antillon* v. *Department of Employment Sec.,* 688 P.2d 455 (Utah 1984), the court held that an alien was permanently residing in the United States under color of law when the INS was aware of his presence and knew where to find him, but it had taken no action to deport him. The plaintiff had entered the United States illegally and had resided in the country for over ten years. He had applied for permanent resident status and for suspension of deportation. However, after several years the INS had taken no action on his applications, nor had it initiated deportation proceedings. The court reasoned that the agency's inaction demonstrated that it had acquiesced in the plaintiff's residence by exercising its discretion not to enforce the law. *Id.* at 459. In *St. Francis Hosp.* v. *D'Elia,* 71 A.D.2d 110, 118-120 (N.Y. 1979), aff'd sub nom. *South Nassau Communities Hosp.* v. *D'Elia,* 53 N.Y.2d 827 (1981), the New York appellate court reached the same conclusion on similar facts. See also *Papadopoulos* v. *Shang,* 67 A.D.2d 84 (N.Y. 1979); *Rubio* v. *Employment Div.,* 66 Or. App. 525 (1984).

The facts in this case may fall squarely within the rationale in *Holley*. The plaintiff has resided in the United States for over twelve years, since she was a small child. Her mother is a permanent resident. Her step-father is an American citizen. It appears that many of her relatives also reside here. The circumstances suggest that the plaintiff's presence in this country is not temporary. Moreover, although the appeals referee made no findings of fact on this issue, the record and briefs suggest that during the relevant time the INS has been aware of the plaintiff's continued residence and that it could have proceeded to deport her but has not done so. If those are the facts, the agency's inaction warrants the inference that the INS had acquiesced in the plaintiff's continued presence in this country. Nor do we consider it likely, unless circumstances change, that the INS will seek to deport her in the future; the plaintiff requires constant medical care and cannot be moved without endangering her life.[5]

On the record, it appears that the Department's appeals referee did not consider whether the plaintiff was eligible for benefits pursuant to the "under color of law" provision in the Federal regulation. Because the denial of the plaintiff's application may have been based on an error of law, the decision granting the Department's motion for summary judgment and affirming the denial of the plaintiff's application cannot stand. Whether the plaintiff is permanently residing in the United States under color of law depends on facts that have not been

---

[5] We note that the plaintiff appears to be eligible for suspension of deportation under 8 U.S.C. § 1254(a) (1982), which provides in part: "As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien . . . who applies to the Attorney General for suspension of deportation and — (1) is deportable under any law of the United States . . ., has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; . . . ."

established beyond dispute. Thus, neither party is entitled to summary judgment. The allowance of the Department's motion for summary judgment is therefore reversed, and the denial of the plaintiff's motion for summary judgment is affirmed.

The judgment in favor of the Department is vacated. A new judgment is to be entered remanding the case to the Department for further proceedings consistent with this opinion, including consideration of such additional evidence as the parties may wish to submit on the issue whether the INS has acquiesced in the plaintiff's residence within the country. The Superior Court is to retain jurisdiction of the case for the entry of an appropriate final judgment upon the entire record. See *Gregory* v. *Commissioner of Pub. Welfare,* 9 Mass. App. Ct. 817, 819 (1980).

*So ordered.*