Salem Hospital *vs.* Commissioner of Public Welfare.

Suffolk. January 10, 1991. - July 11, 1991.

Present: Liacos, C.J., Wilkins, Nolan, O'Connor, & Greaney, JJ.

*Medicaid. Public Welfare*, Medical assistance benefits. *Alien. Statute*, Construction.

A regulation promulgated by the Department of Public Welfare, 106 Code Mass. Regs. § 507.600 (1990), implementing the residency requirement of G. L. c. 118E, § 5, by expressly excluding nonresident aliens from Medicaid benefits to pay for emergency medical treatment did not violate 42 U.S.C. § 1396b (v) (1988). [627-630]

Civil action commenced in the Superior Court Department on May 24, 1989.

The case was heard by *Elbert Tuttle*, J., on a statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William L. Pardee*, Assistant Attorney General, for the Commissioner of Public Welfare.

*Joseph A. Robinson* for the plaintiff.

O'Connor, J. In December, 1988, Maria Stovropoulou, a citizen of Greece visiting relatives in Massachusetts on a visitor's visa, received emergency medical treatment at the plaintiff hospital. Thereafter, the hospital applied to the Department of Public Welfare (department) on Stovropoulou's behalf for Medicaid benefits to pay for the treatment.

General Laws c. 118E, § 5 (1990 ed.), directs the department to "furnish medical assistance to each eligible person *residing in the commonwealth* whose income and resources are insufficient to meet the costs of necessary medical services" (emphasis added). General Laws c. 118E, § 2 (*c*) (1990 ed.), defines the word "reside" as used in c. 118E as

meaning "to occupy an established place of abode with no present intention of definite and early removal, but not necessarily with the intention of remaining permanently." Section 2 (*c*) further provides that "in no event shall the word 'reside' be construed more restrictively or less restrictively than as defined by the Secretary [of the United States Department of Health and Human Services] under . . . Title XIX [42 U.S.C. §§ 1396 et seq. (1988)]." There are several department regulations which are designed to implement the statutory residency requirement. The department denied the hospital's application on the ground that Stovropoulou failed to satisfy those regulations, and the department's decision was affirmed by a referee of its hearing division.

The hospital brought this action in the Superior Court seeking judicial review. The parties agreed in the Superior Court and continue to agree that Stovropoulou did not satisfy the department's residency regulations. The question litigated in the Superior Court, and the sole question on appeal, is whether the regulations, which expressly exclude persons in Stovropoulou's circumstances from Medicaid benefits to pay for emergency medical treatment, are valid in light of 42 U.S.C. § 1396b (v). The parties properly recognize that, pursuant to G. L. c. 118E, § 1, the department's residency requirements are valid only to the extent that they comply with Federal law, see *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 112 (1985), and that the relevant Federal law is set forth in 42 U.S.C. § 1396b (v).

On the basis of a statement of agreed facts and after a hearing, a judge in the Superior Court declared that 106 Code Mass. Regs. § 507.600 (1990), which provides that nonresident aliens are ineligible for Medicaid to pay for emergency medical treatment, is invalid. The judge reasoned that "[t]he legislative history behind 42 U.S.C. § 1396b (v) indicates that Congress intended that non-resident aliens are entitled to Medicaid coverage for emergency services," and also that Congress enacted § 1396b (v) "as a narrow exception to the rule prohibiting Medicaid for non-resident aliens [and that] to insist that an alien meet a residency require-

ment to receive emergency [medical] treatment negates the effectiveness of the statute." Accordingly, the judge vacated the department's decision and remanded the case to the department for further proceedings. The defendant appealed. We transferred the case to this court on our own initiative, and we now reverse the judgment.

Section 1396b of 42 U.S.C. sets forth the rules governing the Federal government's participation with the States with respect to their costs of operating approved medical assistance programs. The basic rule, stated in § 1396b (a), is that the Secretary of Health and Human Services is to pay each State with an approved plan certain percentages of the total amount expended as medical assistance and costs under the plan. The remainder of § 1396b establishes payment and disallowance mechanisms and qualifications of the basic rule. Then, subsection (v) of § 1396b provides in relevant part as follows: "(v) *Medical assistance to aliens not lawfully admitted for permanent residence*[.]

"(1) Notwithstanding the preceding provisions of this section, except as provided in paragraph (2), no payment may be made to a State under this section for medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law.

"(2) Payment shall be made under this section for care and services that are furnished to an alien described in paragraph (1) only if —

   "(A) such care and services are necessary for the treatment of an emergency medical condition of the alien, and

   "(B) such alien otherwise meets the eligibility requirements for medical assistance under the State plan approved under this subchapter (other than the requirement of the receipt of aid or assistance under subchapter IV, supplemental security income benefits under subchapter XVI, or a State supplementary payment)."

For the purpose of resolving the present controversy, there is no difference between a person who is "lawfully admitted

for permanent residence" and one who is "otherwise permanently residing in the United States under color of law." Both persons, for the purpose of resolving the issue presented by this case, are lawful residents of the United States. Thus, § 1396b (v) (1) provides that payments will not be made to States for medical assistance to aliens who are not lawful residents of the United States except that, as provided in § 1396b (v) (2), payments will be made for emergency medical assistance to such aliens, that is, aliens who are not lawful residents of the United States, if they otherwise meet the State's eligibility requirements for medical assistance (except those parenthetically excluded at the end of § 1396b [v] [2]). The State's eligibility requirements include residency in the Commonwealth and residency is not one of the parenthetically excluded requirements.

We do not agree with the judge that Congress enacted § 1396b (v) "as a narrow exception to the rule prohibiting Medicaid for non-resident aliens, [and that] to insist that an alien meet a residency requirement to receive emergency [medical] treatment negates the effectiveness of the statute." We think that Congress enacted § 1396b (v) (2) as a narrow exception to a rule that prohibits Medicaid not only to non-resident aliens but also to resident aliens whose residency is unlawful. The exception does not affect the status of nonresident aliens, such as Stovropoulou, but it does apply to undocumented, unlawful resident aliens. As to them, by reference to the Commonwealth's eligibility requirements, it provides that, for eligibility, an alien must reside in Massachusetts. However, that requirement does not negate the effectiveness of § 1396b (v) (2). On the contrary, it permits Massachusetts residents who are unlawful resident aliens to receive Medicaid benefits that they otherwise, pursuant to § 1396b (v) (1), would be ineligible to receive. Thus, there is no inconsistency between the department's regulations and § 1396b (v). Indeed, were we not to come to that conclusion, we would have the anomalous result that, for a United States citizen to be eligible for Medicaid benefits to pay for emergency medical treatment, he or she would have to be a resi-

dent of the Commonwealth, but an unlawful resident alien would not have to meet that requirement. We are content that the regulations are valid. We have come to that conclusion on the strength of what we consider to be the plain language of the statute. Because the statute is clear, we have not resorted to legislative history as an aid to construction. See *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984).

Our construction of § 1396b (v) as not authorizing Medicaid eligibility for nonresident aliens to pay for emergency medical treatment finds support in the Federal regulations implementing Title XIX. The relevant agency, the Health Care Financing Administration (HCFA), has promulgated regulations setting forth the general requirements for determining Medicaid eligibility under State plans, pursuant to the authority of the Secretary of Health and Human Services under 42 U.S.C. § 1302 (1988). See 42 C.F.R. §§ 435.400 et seq. (1990). After the judge's decision in this case, HCFA promulgated final regulations governing the limited eligibility of certain aliens to receive Medicaid for emergency medical services. See 55 Fed. Reg. 36,813 (1990), codified at 42 C.F.R. §§ 435.000, 436.000, 440.000. These regulations expressly provide that "nonimmigrant" aliens, including "visitors" such as Stovropoulou, ordinarily are excluded from Medicaid eligibility. 42 C.F.R. § 435.408 (b). Furthermore, 42 C.F.R. § 440.255 provides that "[e]ffective January 1, 1987, aliens who are not lawfully admitted for permanent residence in the United States or permanently residing in the United States under the color of law" must be eligible to receive Medicaid for treatment of an emergency medical condition under the State plan, provided the individual "otherwise meets the requirements in [42 C.F.R. § 435.406 (c)] . . . ." Section 435.406 (c) of the HCFA regulations specifically provides that "*residents of the State* who otherwise meet the eligibility requirements of the State plan", but who are not citizens or aliens lawfully residing in the United States, are eligible to receive Medicaid for emergency medical services (emphasis added). Nowhere, however, do the

regulations affirmatively authorize Medicaid eligibility for nonresident aliens seeking emergency medical services. Notably, in the comments accompanying the final regulations, the eligibility of nonresident aliens for emergency medical services is expressly addressed: "Several commenters questioned whether the State residence rules at [42 C.F.R. § 435.403] apply to persons seeking coverage of services needed to treat an emergency medical condition as defined in [§ 1396b (v)] . . . . Section [1396b (v)] provides that payment shall be made for services necessary to treat an emergency medical condition of an alien if that alien is: not a lawful permanent resident or permanently residing in the United States under color of law, and *'such alien otherwise meets the eligibility requirements for medical assistance under the State plan approved under this title* . . . .' One of the eligibility requirements of State plans for medical assistance is that applicants and recipients meet the State residence requirements at [42 C.F.R. § 435.403]" (emphasis in original). 55 Fed. Reg. 36,817 (1990).

We hold that the Commonwealth's residency requirement for applicants or recipients seeking Medicaid benefits to pay for emergency medical treatment does not violate 42 U.S.C. § 1396b (v). We therefore reverse the judgment below and remand for the entry of judgment for the defendant.

*So ordered.*