386                                45 Mass. App. Ct. 386 (1998)

Haverhill Municipal Hospital *v.* Commissioner of the Division of Medical Assistance.

HAVERHILL MUNICIPAL HOSPITAL *vs.* COMMISSIONER OF THE
· DIVISION OF MEDICAL ASSISTANCE.

No. 97-P-0351.

Suffolk. May 4, 1998. - August 27, 1998.

Present: Kass, Gillerman, & Lenk, JJ.

*Hospital,* Medicaid reimbursement.

Discussion of Federal and State law regarding the provision of Federal
financial assistance for sterilization procedures performed on Medicaid
beneficiaries. [388-390]

The Division of Medical Assistance properly denied payment, pursuant to 130
Code Mass. Regs. § 485.003(A), to a hospital for certain elective steriliza-
tion services provided by the hospital to a Medicaid beneficiary, where the
hospital failed to comply with Federal and State regulations requiring
informed consent and documentation for the provision of such services
[390-391]; however, that portion of the board's decision denying payment
to the hospital, pursuant to 130 Code Mass. Regs. § 485.009(C), for child
delivery services provided during the same inpatient stay, solely because of
the absence of compliance with the sterilization regulations, which were
not applicable when the delivery services were performed, served no
discernible Federal or State purpose and was arbitrary and an abuse of
discretion [391-394].

CIVIL ACTION commenced in the Superior Court Department on
August 8, 1995.

The case was heard by *Nonnie S. Burnes,* J.

*Peter V. Kent* for the plaintiff.

*Stephen Dick,* Assistant Attorney General, for the defendant.

GILLERMAN, J. On the basis of the administrative record, see
G. L. c. 30A, § 14(5), a judge of the Superior Court upheld the
decision of the Claims Review Board (the board), affirming the
decision of the Division of Medical Assistance (the division),
which denied the claim of the Haverhill Municipal Hospital (the
hospital) for payment regarding child delivery and elective
sterilization services performed for a patient at the hospital
early in November, 1993. The hospital has appealed, claiming
that the division wrongly withheld payment.

The undisputed facts are these. On November 4, 1993, the hospital admitted the patient for delivery of a child. The patient presented documentation that she was insured by the John Hancock Insurance Company, with family coverage, effective November 30, 1992, and expiring December 4, 1993. The same documentation stated, "TO VERIFY COVERAGE CALL 1-800-367-7781[.] IMPORTANT ** THIS CALL PROTECTS YOUR PAYMENT[.]" The hospital did not call to verify coverage.

In fact, John Hancock had canceled the patient's policy on October 31, 1993, but the hospital did not learn this until March 1, 1994, following the submission of its claim to John Hancock on November 22, 1993.

The patient was not an eligible Medicaid recipient when the delivery and sterilization services were provided by the hospital. Thus, the hospital did not fulfill the detailed requirements of State and Federal law, described below, in order to obtain Medicaid reimbursement for sterilization services it had provided to the patient. However, *after* the patient was discharged from the hospital, she acquired Medicaid eligibility retroactive to November 1, 1993, that being three or four days before the patient delivered her baby and before sterilization services were provided by the hospital.

On these facts, the division denied the hospital's claim for providing sterilization and child delivery services to its patient. The board, which announced its decision as an administrative summary judgment, see 130 Code Mass. Regs. § 450.323 (1994), ruled that because the patient had not executed the required Medicaid-specific consent form, CS-21, see 130 Code Mass. Regs. § 485.007(A)(1)(b) (1993),[1] the hospital's claim for sterilization services as well as labor and delivery services was correctly denied. See 130 Code Mass. Regs. § 485.009(C) (1993), discussed below.

---

[1]When referring to the State regulations regarding sterilizations, the parties often referred to 130 Code Mass. Regs. §§ 433.401 et seq., as well as to 130 Code Mass. Regs. §§ 485.001 et seq. The two parts, while similar, have different applications. It appears that 130 Code Mass. Regs. §§ 433.401 et seq., applies to the payment of physician services, see 130 Code Mass. Regs. § 433.402 (1993), while 130 Code Mass. Regs. § 485.001 "applies to all sterilizations for which reimbursement is claimed under the Medical Assistance Program." 130 Code Mass. Regs. § 485.001 (1993). Since the claim here is for hospital services only we shall refer to 130 Code Mass. Regs. §§ 485.001 et seq., only. We note that the current version of 130 Code Mass. Regs. § 485.000 appears to limit the applicability of that part to sterilization

When the matter came before the Superior Court judge, she found no exception in the regulations that would permit payment and affirmed the decision of the board.

1. *Regulatory background.* The division makes payments to hospitals and other providers under the State program for medically necessary services provided to patients eligible for Medicaid benefits.[2] See G. L. c. 118E, § 1. The hospital, by reason of its agreement to comply with all applicable Federal and State laws, rules, and regulations, see G. L. c. 118E, § 36(4), is an eligible provider of medical services to Medicaid-eligible persons. See *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. 466, 467 (1985). Authorized and funded family planning services provided by the United States Department of Health, Education and Welfare (the Department) include sterilization, see 43 Fed. Reg. 52,146 (1978), but only under the specific conditions described in the Federal and State regulations. See 42 C.F.R. § 441.253 (1979) and 130 Code Mass. Regs. § 485.003 (1993), discussed below.

The history of the development of Federal policy regarding the provision of Federal financial assistance for sterilization procedures for Medicaid beneficiaries is traced in 43 Fed. Reg. 52,146-52,165 (1978). We summarize that history, which is material to the outcome of this controversy.

Before 1973, authority for sterilization services merely required that the receipt of such services be "voluntary." In mid-1973, several tragic examples of sterilization abuse under Federal programs came to light — the sterilization of the adolescent Relf sisters in Alabama, and a case of a coerced sterilization in South Carolina. In July, 1973, the Department imposed a moratorium on the Federal funding of sterilization of persons under twenty-one or legally incapable of consent.

procedures performed at sterilization clinics. See 130 Code Mass. Regs. § 485.401 (1996).

[2]Medicaid, a cooperative State-Federal program which provides medical assistance to the poor, was enacted in 1965 as Title XIX of the Social Security Amendments. See 42 U.S.C. §§ 1396 et seq. A participating State must submit a plan which complies with Federal statutory and regulatory substantive requirements. See *Thomas* v. *Commissioner of the Div. of Med. Assistance*, 425 Mass. 738, 739 (1997). See also note 10, *infra*, and related text. The commissioner of the division is authorized to promulgate regulations in accordance with State and Federal Law. *Thomas, supra.* See G. L. c. 118E, §§ 1 and 7. See generally *Tarin* v. *Commissioner of the Div. of Med. Assistance*, 424 Mass. 743, 746 (1997).

In September, 1973, the Department began rulemaking proceedings. Interim rules were adopted which permitted Federal funding for sterilization of a person who was either under twenty-one or who was mentally incompetent if certain procedures were followed. Those rules were permanently enjoined. See *Relf* v. *Weinberger*, 372 F. Supp. 1196 (D.D.C. 1974), vacated, 565 F.2d 722 (D.C. Cir. 1977).[3]

Beginning in February, 1979, the Department's final rules[4] provided that Federal financial participation in the Medicaid program was not available for the sterilization of persons under twenty-one years old,[5] mentally incompetent persons, or institutionalized persons. In addition, detailed provisions regarding informed consent were imposed. Further, except in the case of certain therapeutic sterilizations, the required informed consent had to be obtained at least thirty days (but not more than 180 days) prior to sterilization.

Most important, 42 C.F.R. § 441.252 (1979), provided that Federal financial participation for sterilization procedures was available "*only if* all the requirements of this subpart [regarding sterilization] were met." (Emphasis added.)

The Federal requirements regarding informed consent included the following: (a) the patient must be informed verbally of the elements of informed consent; (b) an interpreter must be provided if necessary; (c) the person obtaining the consent and the physician performing the procedure must obtain from the patient the material facts regarding the patient's consent and must certify that those facts were obtained; (d) use of a specific consent form is mandated; and (e) documentation of the consent form and certifications is required as a condition of payment. See 42 C.F.R. §§ 441.253, 441.257, and 441.258 (1979). The mandated consent form and the form of certification to be signed by the attending physician appear in the appendix to the Federal regulations.

---

[3]The Court of Appeals held that the controversy was mooted by the Department's withdrawal of its reliance upon the enjoined regulations, and its declared intent to initiate a new rulemaking procedure. *Relf* v. *Weinberger*, 565 F.2d 722, 727 (D.C. Cir. 1977).

[4]The final rules were modified in minor respects in 1982. None of the changes is material to this litigation.

[5]Massachusetts regulations permit sterilization services to a person who is at least eighteen years of age — a provision that is inconsistent with the Federal age requirement of twenty-one years. See 130 Code Mass. Regs. § 485.003(B) (1993); 42 C.F.R. § 441.253(a) (1979).

In sum, Federal policy regarding sterilization procedures was designed to insure that no person who is incompetent, underage, unwilling, or uninformed will be sterilized. "Implementation of this policy requires a strong enforcement program including monitoring of the recipients of Federal financial assistance to see that the procedural safeguards contained in the regulations are followed." 43 Fed. Reg. 52,147 (1978).

Massachusetts regulations, conforming substantially to Federal requirements, have been adopted. See 130 Code Mass. Regs. §§ 485.001 et seq. (1993). Thus, 130 Code Mass. Regs. § 485.003(A) provides that a sterilization service is reimbursable "only if" there has been compliance with the informed consent requirements of 130 Code Mass. Regs. §§ 485.005 and 485.006, and that consent is documented in the manner described in 130 Code Mass. Regs. § 485.007.

However, 130 Code Mass. Regs. § 485.009 (1993) provides that when a "sterilization [is] performed in conjunction with another procedure (e.g., a delivery) [the hospital's services are] reimbursable only if all of the requirements for sterilization outlined in 130 CMR § 485.000 are met." Sub-paragraph (C) of that section adds the proviso that is critical to this appeal: if "all of the requirements for sterilization outlined in 130 CMR § 485.000 [are not met], the claim for the *entire inpatient stay* will be disallowed." (Emphasis added.)

2. *Discussion.* We start with the familiar rules that the commissioner of the division "has the authority to promulgate regulations which give effect to legislative mandates . . . [and] 'we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.' " *Thomas* v. *Commissioner of the Div. of Med. Assistance,* 425 Mass. 738, 746 (1997). On appeal, the hospital has the burden of demonstrating the invalidity of the board's determination. *Faith Assembly of God* v. *State Bldg. Code Commn.,* 11 Mass. App. Ct. 333, 334 (1981). While we may set aside the decision of the board only as permitted by G. L. c. 30A, § 14(7), "to the extent that an agency determination involves a question of law, it is subject to de novo judicial review." *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. at 476, quoting from *Raytheon Co.* v. *Director of the Div. of Employment Security,* 364 Mass. 593, 595 (1974).

We see no basis for setting aside the board's decision insofar as it denied payment for the sterilization services provided by the hospital. Payment for sterilization services, without compliance with the regulations governing those services, is prohibited by the plain words of 130 Code Mass. Regs. § 485.003(A) (1993), described above. The hospital responds with the argument that, in this case, when eligibility was sought and obtained only *after* the sterilization services were performed, it was necessarily "impossible" for the hospital to have complied with the State regulations at the time the services were provided and therefore it would be unfair in the extreme to deny payment for those services.

The argument fails to recognize the importance of the careful and thoroughly considered Federal policy regarding sterilizations. That lengthy deliberative process, outlined above, was based on the perceived need to establish a firm policy, coupled with a strong enforcement program, designed to prevent the sterilization of any person who is incompetent, underage, unwilling, or uninformed. Aside from a hospital record reciting the age of the patient (over twenty-one), there is literally nothing in the record before us — not even a consent form of any character signed by the patient — which suggests that the *substance* of the Federal policy was satisfied in this case.[6]

Moreover, this was an elective sterilization, as the hospital acknowledges. It is not beside the point to observe that had the hospital attempted to verify coverage with John Hancock — as the John Hancock documentation urged it to do — the absence of coverage would have been revealed. Having failed to follow a prudent course, the hospital's argument of "impossibility" does not ring true. The application of 130 Code Mass. Regs. § 485.003(A) to the facts of this case is not unreasonable, and the denial of payment for sterilization falls well within the discretionary authority of the board. See *Van Munching Co.* v. *Alcoholic Bevs. Control Commn.*, 41 Mass. App. Ct. 308, 309-310 (1996).

We do not agree, however, that the board was acting within its authority in denying payment for the labor and delivery services provided by the hospital. At issue is the validity of 130 Code Mass. Regs. § 485.009(C) (1993), as applied to this case by the board.

---

[6]We note, moreover, that the expressed intent of the revamped Federal regulations was to "prohibit[] the obtaining of consent while a woman is in the hospital for labor or childbirth." 43 Fed. Reg. 52,148 (1978).

The board acknowledges that labor and delivery services are reimbursable under the Medicaid program, and it impliedly concedes, as it must, that as a result of the retroactive eligibility of the patient, the hospital would be entitled to reimbursement for those services but for its failure to comply with the requirements of the regulations governing sterilizations, including the failure of the patient to execute Medicaid form CS-21. That failure, the board argues, is decisive because 130 Code Mass. Regs. § 485.009(C),[7] and the "strong [Federal] enforcement program" regarding the Federal sterilization policy, see 43 Fed. Reg. 52,146, 52,147 (1978), require the denial of payment for both sterilization services and labor and delivery services when, as here, the sterilization was performed in conjunction with another procedure during the same inpatient stay.[8]

Quite aside from the deprivation of the benefit of the administrative decision to provide Medicaid eligibility to this patient retroactively — for the record provides us with no information concerning the circumstances or the declared purpose of that decision — the flaw in the board's argument is that § 485.009(C) has no basis in the Federal statutory or regulatory scheme, and as applied to the facts of this case, cannot be justified.

It is undisputed that the Federally authorized and funded medical services in the Medicaid program include labor and delivery procedures performed at an eligible hospital. However, § 485.009(C) requires the denial of reimbursement for those services solely because of the absence of compliance with the regulations regarding sterilization. There is no cognate Federal statute or regulation which requires — or even suggests — such a result, and the board does not make any claim to the contrary. The board simply rests its case on the plain words of § 485.009(C).[9]

The argument fails because "the Legislature intended the

[7]As noted earlier, 130 Code Mass. Regs. § 485.009(C) (1993), provides, in part, "If a sterilization performed in conjunction with another procedure does not meet all of the requirements for sterilization outlined in 130 CMR § 485.000, the claim for the *entire inpatient stay* will be disallowed." (Emphasis added.)

[8]The hospital makes no claim that the sterilization was not "in conjunction with" the labor and delivery services.

[9]The board makes no claim that § 485.009(C) was submitted to and approved by the Federal regulatory authorities, see *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. at 467 ("the State program must be approved and

[Medicaid] benefits program to comply with the Federal statutory and regulatory scheme." *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107, 112 (1985), quoting from *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. at 472. "When there is a conflict between the State and Federal regulations, the Legislature intended that the Department [of Public Welfare] comply with the Federal rule." *Cruz, supra* at 112.[10] Thus, in *Cruz*, the court held that because the Massachusetts regulation regarding residency requirements for Medicaid eligibility was more restrictive than, and thus in conflict with, the Federal residency requirement, the Massachusetts regulation must yield to the Federal regulation. The critical consideration is the need to follow the requirements of Federal law to insure the availability of Federal financial reimbursement. See *Youville Hosp.* v. *Commonwealth*, 416 Mass. 142, 146 (1993); *Tarin* v. *Commissioner of the Div. of Med. Assistance*, 424 Mass. 743, 746 (1997).

The reasoning just described governs this case. The purpose of § 485.009(C) is to nullify a benefit otherwise available under

meet all the requirements of Title XIX and the implementing regulations"), and we do not discuss the point. The hospital points out that there is no cognate Federal statute or regulation. The board acknowledges the point and does not dispute its accuracy, choosing instead to rely on other reasons for its position. See note 10, *infra*, and related text.

Compare *Cruz* v. *Commissioner of Pub. Welfare*, 395 Mass. 107 (1985), holding that the Massachusetts Medicaid regulation regarding residency requirements, which was inconsistent with the Federal regulation, could not be applied to deprive the plaintiff of the benefits of Medicaid when it appeared that the plaintiff might comply with the Federal requirements.

[10]The reasoning of the court in *Cruz* regarding the intent of the Legislature was based on the 1984 edition of G. L. c. 118E, § 1, which provided that the Massachusetts Medicaid program was established "pursuant to and *in conformity with* the provisions of Title XIX of the Social Security Act (P.L. 89-97) (emphasis added)." *Cruz, supra* at 112. See *Haley* v. *Commissioner of Pub. Welfare*, 394 Mass. at 472. Section 1 of c. 118E was rewritten in 1993. See St. 1993, c. 161, § 17. The former § 1 now appears in § 9 of c. 118E (the Medicaid program is established "pursuant to and in conformity with the provisions of Title XIX . . ."). See § 12 of c. 118E, par. third (action by the division shall be "in conformity with all requirements governing the availability of federal financial participation to the commonwealth under said Title XIX . . ."), and par. fourth ("The division may adopt . . . regulations suitable or necessary to carry out the provisions of this chapter and said Title XIX . . ."). See also *Salem Hosp.* v. *Commissioner of Pub. Welfare*, 410 Mass. 625, 626 (1991), which follows the *Cruz* analysis.

the Federal scheme as a penalty for noncompliance with the regulations regarding sterilizations. That purpose has no basis in the Federal scheme, and is inconsistent with Federal regulations — a result not intended by the Legislature when it granted rule-making power to the division. See G. L. c. 118E, § 12, par. fourth, as inserted by St. 1993, c. 161, § 17 ("The division may adopt . . . regulations suitable or necessary to carry out the provisions of this chapter and said Title XIX . . ."). It is the Federal scheme which prevails, not the contrary State regulation. As required by c. 118E, § 9 (see note 10, *supra*) and by Federal law, the hospital is entitled to be paid for the labor and delivery services it provided.

Further, the application of § 485.009(C) to the facts of this case cannot rationally be supported. There is no discernible Federal or State purpose served by the denial of payment for the hospital's labor and delivery services — which were immediately necessary — because of the hospital's failure subsequently to comply with unrelated State Medicaid sterilization regulations which were *not applicable* when the delivery services were performed. Nor does the board suggest any such purpose. The retroactivity of the patient's Medicaid eligibility does not allow the board to view the case as though the patient were Medicaid-eligible at the time the delivery was performed when in fact she was not then eligible.

We conclude that, in the circumstances of this case, the denial of payment to the hospital for the labor and delivery services it provided cannot be justified by the provisions of § 485.009(C). The result is that the board's decision was arbitrary and an abuse of the board's discretion. See G. L. c. 30A, § 14(7)(*g*). We set aside the decision of the board in so far as it denied payment to the hospital for labor and delivery services to its patient.[11]

The judgment is vacated and the case is remanded to the Superior Court for the determination of the amount due the

---

[11]We recognize that under the reimbursement formula used by Massachusetts for its acute care hospitals, called "SPAD" (Standard Payment Amount per Discharge), the hospital is paid a flat fee whether the Medicaid patient is the recipient of one procedure or ten, and that the effect of allowing payment for the labor and delivery services may be seen as a nullification of the decision not to pay for the sterilization services. However, the board, while it argued this point below, did not do so on appeal, and the point is waived. See Mass.R.A.P. 16(a)(4).

hospital and the entry of a judgment in favor of the hospital consistent with this opinion.

*So ordered.*