MacDonald, D. Lloyd, J.
The Plaintiffs motion is DENIED for the reasons that follow.
Background
Before the Court is the G.L.c. 30A, § 14 appeal of a hearing officer’s decision affirming the original decision of the Commonwealth’s Office of Medicaid (“Mass-Health”) to deny payment to a provider surgeon at Boston’s Children’s Hospital for a liposuction procedure to remove a fat pad from the Plaintiffs upper body in May 2004.
The Plaintiff at the time was 15 years old. The Plaintiff was born with HIV, which quickly thereafter developed into AIDS. She has been treated at the Children’s Hospital since then with advanced antiviral drug therapy. Fortunately, the therapy has substantially succeeded in retarding the spread of the disease. However, a collateral effect of the medication regime was the development of the fat pad (referred to in the record as a “buffalo hump”). As of the spring of 2004 the accumulation of fat affected the Plaintiffs posture, causing her to be bent over and to have to endure increasing amounts of pain.
In the medical records forming the record before the Court, the buffalo hump was first noted in February 2004, and in April 2004 the Plaintiffs physicians recommended liposuction surgeiy for its removal. Under MassHealth’s reimbursement procedures, non-emergency liposuction in these circumstances requires prior authorization. On May 10, 2004 the surgeon applied for prior authorization and noted that the surgeiy was tentatively scheduled for May 27th.
The record is unclear as to whether the surgeiy was performed before a decision on the request for prior authorization was acted on; however, for purposes of this decision, the Court accepts the Plaintiffs (through her mother’s) account that the request had been denied before the surgeiy was actually performed.[1]
MassHealth’s notice to the Plaintiff of the denial included the following statement: “If your medical condition has changed or if you have additional relevant information ... any medical provider you choose, including the original provider, may submit a new request for prior authorization at any time.” A substantially identical notice was communicated to the provider.
Upon being informed of the denial, instead of seeking reconsideration on an expanded record, the Plaintiffs mother decided to go forward with the surgeiy. She executed an acknowledgment with the surgeon and the hospital that she would be personally responsible for the cost of the procedure if reimbursement was not eventually secured.
As to why she went forward under these circumstances, the Plaintiffs mother testified before the hearing officer, “I must admit, I’m a mother lion, in April we decided to do it, and I wanted it done.” (Transcript at 37.) However, she further stated, “I was never, ever, even once told that my right to appeal the decision by MassHealth ended if I decided to do the surgeiy.” Id. at 39.
The surgeiy was performed, and in August the physician principally responsible for the Plaintiffs AIDS treatment noted the “excellent results” obtained. However, payment was refused by MassHealth because prior authorization had not been received.
The hearing officer denied the Plaintiffs appeal, finding 130 CMR 433.408(A)(1) “clear and unambiguous” in its requirement that prior authorization be secured for a provider to be paid for the non-emergency procedure at issue.
The hearing officer further found no support for the Plaintiffs argument that if upon review of the medical necessity of the procedure the hearing officer concluded that the original determination of the same had been in error, that such conclusion should “date back” and cause retroactive reimbursement to be made to the Plaintiff.
Standard of Review
Under G.L.c. 30A, § 14 the Court is required to give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id., §14(7). See Tri-County Youth Programs, Inc. v. Acting Deputy Dir. of the Div. of Employment and Training, 54 Mass.App.Ct. 405, 408 (2002). The agency’s decision, however, must be supported by substantial evidence. G.L.c. 30A, § 14(7)(e). Issues of law are for the Court. Haverhill Municipal Hospital v. Comm’r of the Div. of Med. Assistance, 45 Mass.App.Ct. 386, 390 (1998), citing, inter alia, Haley v. Comm’r of Pub. Welfare, 394 Mass. 466, 476 (1985).[2]
Here the Plaintiff challenges not the agency’s exercise of discretion, but hearing officer’s conclusion, in substance, that he had no discretion. The hearing *108 officer found that because prior authorization had not been obtained by the surgeon provider, payment for the procedure was prohibited ipso facto. The Plaintiff characterized MassHealth’s position as “patently absurd” (and thus arbitrary and capricious). She further submits that so construed, the operative regulation violates federal law.
The Appeals Court has recently addressed the scope of review in this circumstance. Massachusetts General Hospital v. Comm’r of the Div. of Med. Assistance, 05-P-642 (June 8, 2006):
When reviewing the Division’s regulations “we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.” Consolidated Cigar Corp. v. Department of Pub. Health, 372 Mass. 844, 855 (1977). However, “a regulation that is irreconcilable with an agency’s enabling legislation cannot stand.” Quincy v. Massachusetts Water Resources Authy., 421 Mass. 463, 468 (1995).
In determining “whether the agency conformed with the controlling statute!,] . . . [w]e are limited to a determination whether the State action is arbitrary, capricious, or contrary to law.” Massachusetts Hosp. Assn. v. Department of Pub. Welfare, 419 Mass. 644, 652 (1995). See Tarin v. Commissioner of the Div. of Med. Assistance, 424 Mass. 743, 750 (1997). “[A] court cannot ‘substitute [its] judgment as to the need for a regulation, or the propriety of the means chosen to implement the statutory goals, for that of the agency, so long as the regulation is rationally related to those goals.’ ” Massachusetts Fed. of Teachers, AFT, AFL-CIO v. Board of Educ., 436 Mass. 763, 772 (2002), quoting from American Family Life Assur. Co. v. Commissioner of Ins., 388 Mass. 468, 477, cert. denied, 464 U.S. 850 (1983).
Merits
MassHealth is administered in conjunction with the federal Medicare and Medicaid programs and is subject to federal law. 42 U.S.C. § 1396a(a)(30)(A) requires that states such as Massachusetts “safeguard against unnecessary utilization of . . . care and services to assure that payments are consistent with efficiency, economy and quality of care . . .”
MassHealth’s prior authorization regulation, 130 CMR 433.408, at issue here was promulgated pursuant to that federal mandate. The regulation is explicit: Providers don’t get paid for the non-emergency services that are subject to the regulation unless prior approval is obtained. There is no qualification in the regulation.
The rationale for such a policy was recited in MassHealth’s memorandum of law: “MassHealth has purposefully assigned to providers the risk for failing to wait. When, as here, sophisticated long term Medicaid providers knowingly and willingly choose to violate MassHealth’s regulations by not waiting, then those providers properly suffer the adverse consequences of their actions.”[3]
For purposes of the present case, it is not necessary for the Court to confront the question whether under all circumstances it would be lawful for MassHealth to refuse reimbursement to providers who fail to obtain prior authorization no matter how compelling the medical necessity of the service is later determined to be. Rather, for present purposes, it is sufficient to conclude that on the facts before the Court, MassHealth’s application of such a rule was reasonable and compatible with federal law.
To recite, again, the key facts: the decision to seek the Plaintiffs liposuction surgery was not made until April 2004; the provider surgeon did not apply for the prior authorization until May 10th; prior authorization was declined on May 26th, but instead of filing an amended or new request with additional information (as the Plaintiff and the provider were given notice of the opportunity to do by MassHealth), the Plaintiff decided to have the surgery performed without prior approval knowing that such prior approval had been declined.
As noted, Plaintiff submits that MassHealth’s regime as applied here is “patently absurd.” The Court finds the opposite: MassHealth’s policy and its implementation were completely consistent with federal law and with a rational regime for the management of scarce medical resources. Those acting on behalf of the Plaintiff (her mother and the provider surgeon and hospital) were rash in the face of the non-emergency circumstances presented.[4] Accordingly, it is reasonable that they bear the financial consequence of their failure of compliance with MassHealth’s regulations.
ORDER
The Plaintiffs motion for judgment on the pleadings is DENIED. Judgment shall enter for the Defendants.

 The MassHealth physician responsible for reviewing the request for prior authorization testified at the hearing below that as she was making her inquiry as to the need for the surgery, she was informed that the surgery had already taken place.

 “[T]he court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is — (a) In violation of constitutional provisions; or (b) In excess of statutory authority or jurisdiction of the agency; or (c) Based on an error of law; or (d) Made upon unlawful procedure; or . . . (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law." G.L.c. 30A, §14.

 The Plaintiff cited Greer v. Goetz, 402 F.Sup.2d 876 (M.D.Term 2005), in support of her argument that federal law requires that if an appeal from a denial of prior authorization is successful, a party must be reimbursed for the costs previously incurred. The case does not stand for that proposition as it applies to providers, as distinct from enroUees. In Greer the court was reviewing proposed amendments to a consent decree pursuant to which the Tennessee Medicaid *109 program was administered by the federal court. At issue there was a proposal with regard to prescription drugs that required prior approval and sanctions for those who failed to comply. While the Court found that an inflexible rule with regard to the reimbursement of individuals was not acceptable, a claim for reimbursement by providers could “be categorically denied because providers and pharmacists are aware of the prior authorization requirement, and are responsible for obtaining such authorization.” Id. at 103-04. As noted above, the Massachusetts regime at issue here is provider focused. Even as to enrollees, the Greer court did not go so far as to say that all subsequent determinations of suitability for reimbursement would automatically entitle an enrollee to reimbursement regardless of the enrollee’s conduct in having secured the prescription drugs.

 By definition the surgery at issue was non-emergent. 130 CMR 433.408. If the provider believed that an emergency was present, the surgeiy would have been billed as such and prior approval would not have been required. The reimbursement request here to MassHealth was on the basis of a non-emergent billing code.